This is a direct appeal for Mr. Garner's conviction for unlawful possession of a weapon by a felon following a jury trial. I have raised three issues in my brief, and I would like to begin my presentation with Argument 2. In Argument 2, I ask this Court to reverse Mr. Garner's conviction because the trial court committed reversible error in refusing to permit recross-examination of state witnesses as a blanket policy. In Mr. Garner's jury trial, the evidence showed that the police chased Mr. Garner through the streets on a strip in Collingdale at 2 a.m. following the closing of the bars, where between 200 and 300 people were gathered in the streets. Several officers testified that they saw Mr. Garner throw an object while running away from the officers. Mr. Garner was eventually apprehended by the police, and a handgun was recovered between 10 and 20 yards from where he was apprehended. The question presented to the jury was whether Mr. Garner possessed the handgun that the police recovered after chasing Mr. Garner through the area. On the defense's cross-examination of the primary witness for the state, Detective Anthony Williams, Williams testified that he did not know whether the state lab tested the handgun for DNA and fingerprints. On a redirect examination, the prosecutor asked Williams why the evidence was not tested. Williams stated that the lab has a policy that they will not test guns for touched DNA and unlawful possession of a weapon case because it's too labor-intensive. Williams then identified People's Exhibit 13 as a policy statement from the state police, which indicates that the lab will not test firearms in these cases. This was the first time there was any mention of the state police lab policy. It was not discussed before trial and came out first in the state's redirect examination of Detective Williams. After the state had no further questions of Williams, the court told the prosecutor to call his next witness. At that point, defense counsel asked for an opportunity to re-cross-examine Williams. The court stated, you had an opportunity to cross. You crossed. That is direct. That's the way it works. The state gets the last shot at a witness when they have a wrong witness. The court committed reversible error by now permitting re-cross-examination of a state witness as a blanket policy. First, the court was incorrect. There is no rule that the state gets the last shot at its own witness and that re-cross-examination is not allowed. Although the extent and the scope of the examination are within the discretion of the court, the court in this case refused to exercise any discretion by relying on its own improper blanket policy that re-cross-examination of state witnesses is not allowed. There is no such rule that forbids examination beyond cross-examination. This denied Mr. Garner his right to confront the witnesses in cross-examination and was reversible error. Secondly, had the court properly... Before you move to your next issue, my notes indicate I think there were a number of witnesses after this initial witness where the defense counsel did not even attempt to re-cross. Is that correct? I think four or five? There were four or five other? Yes, that's correct. That's correct. And as an indication of the court's rule that it stated after the redirect examination of Detective Williams, the defense counsel then did not attempt to re-cross any other of the state's witnesses. In addition, again, the examination is within the discretion of the court, but the court did not exercise any discretion here, but had the court exercised its discretion as to whether to permit re-cross-examination, the re-cross of Detective Williams should have been allowed since the state presented new matters during Williams' redirect examination. Since the right to re-cross-examination is the same as the right to cross-examination when the opposing party explores new matters on redirect examination. The new matter presented here on redirect examinations was Williams' testimony that the handgun recovered in this case was not tested for DNA by the lab because of their policy. Again, this was brought up for the first time on redirect examination. Because the state police policy against firearm testing and unlawful possession of firearms case was first introduced during the state's redirect examination, the defense should have been permitted to question Williams about this on re-cross-examination. This was presidential error for the court to refuse Mr. Garner this opportunity to re-cross-examination on a new matter that was presented on redirect examination. However, because the trial counsel did not object to the court's blanket policy to permit re-cross-examination, the issue is fulfilled here. I ask this court to review the error of the plain error document on the second prong of the plain error rule because the right to confront a witness, including the right to cross-examine a witness, is a fundamental right and is of such a magnitude that the error denied Mr. Garner a fair trial. In sum, because the post-blanket policy of refusing to permit the re-cross-examination of any state witness was reversible error, however, had the court exercised its discretion as to whether to permit the re-cross-examination of Detective Williams, re-cross should have been allowed because the state explored new matters during Williams' redirect examination. Therefore, I ask this court to reverse this conviction and remand for a new trial. In argument three, I ask this court to reverse Mr. Garner's conviction and remand for a new trial because the trial court committed reversible error by giving the jury a crim deadlock instruction, whether there was no indication that the jury was deadlocked or had reached an impasse in its deliberations. After one hour and 20 minutes into the deliberations, the jury sent out a note asking the court to give them the legal definition of reasonable doubt and how it pertains to their decision of guilty or not guilty. The court informed the attorneys it intended to respond to the jury's question with a crim deadlock instruction. Neither of the attorneys objected, and the court gave the crim instruction to the jury. About an hour later, the jury returned a guilty verdict. Because there was no indication that the jury was deadlocked or had reached an impasse, it was reversible error to give the crim lock instruction here because it was premature, coercive, and may have patient-averted. How is it coercive? Your Honor, the jury was not persuaded of a reasonable doubt. They stated it had proven its case beyond a reasonable doubt. There are language in the crim instruction that would put pressure on that minority juror to reconsider its doubts, whether it would weaken that juror's resolve to return a not guilty verdict. So there is language in the instruction. There are cases that say that, you know, it's like, the court's called the heathen majority. There's somewhat of a pressure on the minority juror when a crim instruction is given. And I think, and partially, the court's referred to the language in the crim instruction that is given to the jury. It says, in the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is irrelevant. So that has a coercive effect on that juror maintaining its independence. And that's why the crim instruction should only be given when the jury indicates it's deadlocked or indicates it has a recent impasse in its deliberations. This issue also should be considered under the plain error rule because the jury instructions involve substantial rights that affect the integrity of the judicial process. So even though defense counsel didn't object to the crim instruction, this court should still reverse its conviction under the second prong of the plain error doctrine. Thank you. Thank you, counsel. Counsel? Good morning, Your Honor. May I please accord, Mr. O'Neill? My name is Patrick Daly. I'm here on behalf of the state. Addressing defendant's argument number two, I think Justice Goldenhorst makes an interesting comment, something that I thought of as well. Well, let me just start by saying this. I don't think there's anyone really kind of contesting the fact that Judge Schwartz's policy was not a proper policy. There's no rule that says that you can kind of prevent an attorney from recross-examining. And I think that the case that the defendant cites in his brief, which was heartless, I think is pretty much on point in that regard. So we're not contesting that the court's ruling was an error. That being the case, then I think that the question then before this court is how does this error get treated in the context of the case? Is it a structural error? I.e., is it a violation of the defendant's Sixth Amendment right to confrontation? If it is, then it probably becomes something that would be prejudice-free in the sense that the defendant would be denied the fundamental right to a fair trial. Or is this considered to be a trial error? And in that case, then, the plain error considerations and the closeness of the evidence considerations for one of the two prongs of the plain error doctrine are applicable in this case. It's opposition that it would be the latter situation. And that argument, I think, derives in some part from the heartless decision as well, along with the case that it relies upon for this particular holding. This is not a case where the defendant was denied the right of confrontation. Obviously, the defendant had the full opportunity to cross-examine this witness on his testimony that was presented. When you look at the heartless decision, the root problem that the court had there was not the policy, if you will, not just the policy, if you will, of restricting a re-re-examination of the witness. But the effect of that particular policy was detrimental to the defendant in that information had been brought out in a case where a connection between the defendant and the crime was at issue and there were no fingerprints. There was testimony which insinuated that a vehicle tied to the defendant was at the scene. And when the defendant was prohibited from examining that particular issue, then the court had found that that had left perhaps a misconception or misperception that would be detrimental to the defendant's interests in that case. It relied upon a case called Burundi County National Bank v. Myra, which followed the same line of reasoning that the prejudice that was attached to restricting the re-cross-examination had the effect of allowing the misleading information before the jury to remain essentially unanswered. So what we derive from these cases, at least, and there's obviously a limited set of cases in which we can draw upon this, is that the court did not find, at least in the criminal cases, and we'll stick them on an issue in the civil case, obviously, that it was not a structural error. It was an error that was tied to the fact that the defendant suffered a material prejudice in the case. If that's true, then if that's the analytical process by which this court is to review this, then the plain error rule is applicable here. And the court would have to examine this under both prongs of the plain error rule. There was no objection here, nor was there any offer of proof. Now, getting back to Justice Goldenhurst's comment, it probably may be true, probably may be true, that defense counsel was felt perhaps impaired in the re-cross-examining, but the problem is we don't know. And the reason we don't know is not simply because the defendant failed to make an offer of proof in this case. The fact is the defendant didn't even include it in a post-trial motion in which a record could have been made at that time. Does it make a difference that there was no attempt at re-cross-examination with five subsequent witnesses? I think it makes a difference in the sense that we don't know if that's actually what the defendant ever wanted to do. I think any reasonably competent defense attorney understands the need to make a record when you're going to challenge what you perceive to be court error. Simply kind of shrinking off into the corner because you're afraid the judge is going to get mad at you again. I can understand that from a psychological standpoint, but it does nothing to preserve the issue, nor does it assist the parties of this court in assessing the degree of severity of error that may have occurred in this case. So I think that it's not just a matter of not being with the offer of proof, which I think would have been an appropriate thing at that time. I think this case really illustrates the point. The defense argument today is largely premised upon, I think, a speculation about what defense counsel wanted to cross-examine with her. And that was the new information that was brought about by the fact that the state had referenced the state police's DNA-touched DNA testing policy. That may be true. Why? We don't know. We don't know. So the error not just draws upon speculation, but it would require double speculation to assume that there's anything else that happened during the course of the trial that the defendant had foregone. And the only way we're going to know that is if the defendant had done what they were supposed to do in terms of preserving the error. There's no claim of ineffective assistance of counsel here. So this issue is strictly before this court as a matter of plain error. As far as let's assume the correctness of the supposition that this is what defense counsel wanted to cross-examine upon, then it's also categorically different from, say, Ms. Harper's case in the sense that the information that this witness was providing was not misleading. It didn't leave some unanswerable impression. He assumed it was reflecting a policy in which obviously this officer had no control over the creation of. And I point out in the case that if this had been a problem, it would have been nothing for the defendant to ask that he be allowed to call the witness in the crime lab to testify about this policy. But that wasn't attempted. So if that indeed is the subject matter in which we're formulating this argument that there's prejudicial error here or that there's error that denied the defendant the fundamental right to a fair trial, then I think that it's a thin reed in which to ask for reversal because it didn't create anything that recross was going to flesh out in a way to resolve some ambiguity, some misperception, something that basically pointed the defendant as guilty. It was the defendant who was the one who introduced this topic of the touch DNA during cross-examination. So if there's kind of a whiff of insinuation here that the state was sort of ripping something new out of the defendant here, it's the defendant who brought it on himself in the first instance. That's not the fault of the defendant. This is their argument. This is their strategy. But nonetheless, you take your witnesses to come. This was the response that he got. So I just think in that sense that it's a little bit different than Ms. Harper's case that the defendant relies upon, and it's a critical distinction. With regards to the first prompt plain error, which relates to also the first issue in this case where we can see the 430B instruction error, that the evidence is not closely balanced. We have multiple witnesses, all of whom testified to observing the defendant discard a weapon after he ran from a scene where one officer testified he saw him reach into the vehicle, grab a gun, and take off running. So it's not closely balanced. So under either prompt or the plain error test, this defendant's claim of a trough with air for restriction of cross-examination should be deemed procedurally defaulted. With regards to the third issue, which the defendant raises as far as the print instruction is concerned, this is not simply really even a plain error case. It's really an issue of the style. Here the jury came back. They had a question about the definition of reasonable doubt. And I do want to emphasize here that the defendant argues, I think, that that shows that the jury is having trouble with the elements, which doesn't even suggest that. Reasonable doubt is an instruction that the jury is given. It doesn't have a definition. And I think a lot of jurors probably are wondering, what does that mean and how do we apply that to the facts of this case? It didn't demonstrate a sort of numerical split here. This is a case not where error occurred and wasn't raised by the defendant. Here the court, off of this particular print instruction, the defense counsel said, I think that's a great idea. Let's do that. And I was thinking the same thing. This is what we ought to give to this jury. And the courts have held that that's not even really a plain error. You can't have plain error because it's not plain error. It's acquiescence. Acquiescence, estoppel. The defendant should not be allowed to basically allow, to join in, if you will, what the defendant now claims is error and come up on appeal and argue that the court should have done exactly what it is that the defendant agreed with the court that it ought to do. And that's just basically a fundamental principle of estoppel. So the defendant should not be allowed relief. And to follow up on Justice Overstreet's question, I don't believe it was coercive. There is no indication of a deadlock jury. The jury deliberated for well over an hour. An hour after receiving the instruction. So it's not an instance where having received a purportedly coercive instruction, they went back and served the verdict, you know, within 15 or 10 minutes. They clearly continued to deliberate for an extended amount of time after that. In a case which is quite frankly pretty straightforward in its facts, the jury was asked to decide whether or not the defendant possessed the weapon. The only other element to the case being that the defendant had a prior conviction  So for these reasons, Your Honor, we look forward to hearing other reactions from people in this case. And this the only time people have asked that this Court affirm the judgment for them. Does this Court have any questions? Mr. Roberts your Honor, Thank you Counsel. Counsel. Mr. Honors, I do submit to this Court regarding Argument 2 that the right to cross-examination is such a fundamental right that the second prong of the plain error rule applies and that it denied Mr. Garner a fair trial. With respect to the Defense Counsel's failure to objectively present an offer of proof as to what new matters he would have explored or what he would have asked Detective Williams on recross-examination, I think it's important to look at the context of how this occurred. Again, I mentioned before that there was no discussion, pre-trial discussion as far as I can tell in the record, about this police policy that precluded testing of these weapons by the State Police Lab. So this just came on during the redirect examination of Detective Williams. Therefore, it would be unfair to penalize Mr. Garner here for Defense Counsel's failure to provide an offer of proof because there was no pre-notice as to this policy or what it involved. So provide any type of pre-understanding by Defense Counsel that this issue could possibly come up during the trial. And as a matter of fact, Judge Schwartz was so ironclad in his policy of not allowing recross-examination that Defense Counsel could not be faulted for not presenting an offer of proof or objecting any further. Judge Schwartz's statements were very clear. He said that, you know, there is no redirect examination. You had your shot for cross-examination already and then the State gets to redirect and then that's it. You know, that the State has the last shot at its release. That was an adamant, ironclad statement by Judge Schwartz and I think it's unfair to attribute any type of omission on the part of Defense Counsel in that context. Are there any other questions, Your Honors? Otherwise, I think I will just end on my briefs. I don't believe there are. Thank you very much. Thank you, Counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement.